IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEMARCUS G., | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:20-cv-02103-S-BT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | § § § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Demarcus G.'s[2] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 4). For the reasons explained below, the District Court should REVERSE the Commissioner's decision.

---

[1] Ms. Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

## Background

Plaintiff alleges that he is disabled due to bipolar disorder and a hand injury.[3] Admin. R. 24 (ECF No. 20-1); Pl.'s Br. 6-7 (ECF No. 22). He was born in 1988 and was 29 years old on his alleged disability onset. Admin. R. 29. Plaintiff has a limited education and can communicate in English. *Id.* at 27. Plaintiff has past work experience as a bus driver and a semi-truck driver. *Id.*

On February 22, 2018, Plaintiff applied to Social Security for disability benefits and supplemental security income. *Id.* at 19. After his application for disability-insurance benefits was denied initially and upon reconsideration by the Commissioner, Plaintiff requested a hearing before an administrative law judge (ALJ) to determine whether Plaintiff is disabled. *Id.* The hearing took place in Dallas, Texas, on October 7, 2019. *Id.*

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. *Id.* at 20. At step one of the five-step sequential evaluation,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity

---

[3] While the ALJ considered Plaintiff's prior crush injury to his left hand in his disability analysis, Plaintiff admitted at the administrative hearing that "[h]e's not really in current treatment" and he did not "think there's going to be much in the way of physical limitations." Admin. R. at 39. In his appellant brief to this Court, Plaintiff only addresses and alleges disability due to bipolar disorder. Pl.'s Br. 6-7. Therefore, the Court limits its consideration here to Plaintiff's allegations of disability caused by bipolar disorder.

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the

since December 1, 2017. *Id.* at 22. At steps two and three, the ALJ found that Plaintiff had severe impairments of bipolar disorder, marijuana-use disorder, alcohol-use disorder, residuals of left-hand injury, and mild carpal tunnel syndrome, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 22. At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work with some exceptions, but Plaintiff could not perform his past work. *Id.* at 23-27. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could work as a cleaner/housekeeper, marker retail, and routing clerk—jobs that exist in significant numbers in the national economy. *Id.* at 27-28.

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id.* at 5. The Council denied review. *Id.* Plaintiff then filed this action in federal district court, in which he contends the ALJ erred in finding him not disabled. Specifically,

---

impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

Plaintiff argues the ALJ's disability determination and denial of benefits is not supported by substantial evidence.[5] Pl.'s Br. 6. The Court agrees.

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)) (citation and internal quotation marks omitted)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v.*

---

[5] As discussed later, Plaintiff also argues the ALJ failed to comply with procedural safeguards to determine whether Plaintiff is disabled when not taking his medications set forth in Social Security Regulation (SSR) 18-3p. *See Simmons v. Berryhill*, 2018 WL 3900912, at *3 (N.D. Tex. July 31, 2018) (citing SSR 82-59, 1982 WL 31384 (rescinded and replaced by SSR 18-3p, 2018 WL 4945641, at *2-4 (Oct. 2, 2018))), *rec. accepted*, 2018 WL 3873664 (N.D. Tex. Aug. 15, 2018); *see also Ayala v. Saul*, 2020 WL 2487051, at *5-6 (N.D. Tex. Mar. 13, 2020), *rec. accepted in part and rejected in part*, 2020 WL 1226879 (N.D. Tex. Mar. 13, 2020). The Court pretermits consideration of this argument because the Court finds the ALJ's disability determination is not supported by substantial evidence and therefore should be reversed.

*Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support his decision. *Copeland*, 771 F.3d at 923 (citation omitted).

## Analysis

Plaintiff argues substantial evidence does not support the ALJ's disability determination and denial of benefits because the ALJ cannot disregard all medical-opinion evidence about Plaintiff's mental function and make an RFC assessment based upon his own lay interpretation of raw medical data. Pl.'s Br. 6. The ALJ determined that Plaintiff had the RFC "to perform light work . . . except . . . [he] can frequently but not constantly use the left non-dominant hand for handling and fingerling." Admin. R. 23. The ALJ listed other limitations to Plaintiff's RFC stating: Plaintiff can understand, remember, and carry out simple, routine, repetitive tasks; can have occasional interaction with coworkers and supervisors; cannot have public interaction; and requires few workplace changes. *Id*. The ALJ determined Plaintiff's RFC "[a]fter careful consideration of the entire record." *Id*.

RFC is the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (Ramirez, J.) (internal quotations omitted) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir.

5

1988) (per curiam)), *rec. accepted*, 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. at § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status." *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's] residual functioning capacity is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [the ALJ's] findings." *Hill*, 2020 WL 6370168, at *6 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence

6

supporting" the ALJ's decision. *Hill*, 2020 WL 6370168, at *6 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Hill*, 2020 WL 6370168, at *6 (citing *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)). After reviewing the hearing decision and the administrative record, the Court finds the ALJ's RFC determination is not supported by substantial evidence.

Plaintiff argues the ALJ rejected all the medical opinions concerning Plaintiff's mental limitations and therefore had no legitimate basis to form a valid RFC. *See* Pl.'s Br. 29. Accordingly, Plaintiff alleges the ALJ's RFC determination is not supported by medical-opinion evidence but on the ALJ's lay interpretation of raw medical data. *Id.* The Commissioner mischaracterizes Plaintiff's position, stating Plaintiff "argues that the ALJ's RFC finding should have mirrored a medical opinion." Def.'s Resp. 6 (ECF No. 23). The Commissioner contends the "ALJ is not required to accept any medical evidence *in toto*, rather, the ALJ's RFC determination is based on the evidence as a whole." *Id.* at 7 (emphasis in original) (internal quotations and citation omitted). And the Commissioner argues that Plaintiff "forgets . . . that [the] determination of his RFC is the ALJ's sole responsibility, not the responsibility of any physician, and such an assessment is not a medical opinion." *Id.* at 8 (citation omitted). In reply, Plaintiff reasserts his original argument that the ALJ violated Fifth Circuit Precedent.

7

The Fifth Circuit "held that an ALJ may not—without opinions from medical experts—derive" a plaintiff's RFC and "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Jeff Ivan M. v. Berryhill,* 2019 WL 3847992, at *5 (N.D. Tex. July 26, 2019) (Horan, J.) (internal quotations omitted) (*quoting Williams v. Astrue,* 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995))), *rec. accepted,* 2019 WL 3842975 (N.D. Tex. Aug. 15, 2019) (Cummings, J.); *see Moreno v. Astrue,* 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (explaining that, without expert medical interpretation, "evidence describing the claimant's medical conditions is insufficient to support an RFC determination"), *rec. accepted,* 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010). "ALJs 'must be careful not to succumb to the temptation to play doctor' or make their own independent medical assessments." *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990) (Posner, J.)).

In this case, the ALJ stated: "As for medical opinion(s) and prior administrative medical finding(s), the undersigned ***will not defer or give any specific evidentiary weight to any prior administrative medical finding(s) or medical opinion(s),*** including those from your medical sources." Admin. R. 26 (emphasis added). Therefore, to determine the effects of Plaintiff's mental impairments on Plaintiff's ability to work, the ALJ impermissibly relied on his own lay opinion derived from his interpretation of the medical

8

evidence and not that of a medical expert. *See Jeff Ivan M.*, 2019 WL 3847992, at *5.

The ALJ explained that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" to arrive at his RFC. Admin. R. 23. The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)." *Id.* at 24; *see id.* at 26. However, the ALJ found all the medical opinions in the record to be unpersuasive—Boline Olayiwole, APN, and the State-agency medical physicians and consultants—and did not rely on them.[6] Pl.'s Br. 29.

Instead, the ALJ relied on "[o]bjective findings on mental status exam[s] that were normal," including notes on mental-status exam forms notating "adequate grooming, cooperative behavior, normal speech, fair insight and judgment, intact memory, average mood, and no delusions or paranoia" when Plaintiff arrived for medical care at Dallas Metrocare Services and in jail in early 2019.[7] *Id.* at 25. According to the ALJ, this medical evidence "supports the

---

[6] *See* Admin. R. 26 ("The undersigned has considered the opinion of Bolanle Olayiwole of Metrocare . . . This opinion is not consistent with the largely normal objective findings on mental status exams discussed above and is not persuasive."); *see also id.* ("The undersigned has also considered the administrative findings of fact made by the State-agency medical physicians and other consultants. . . . The State[ ]agency medical consultants' assessments are not persuasive due to the inconsistency with the record as a whole."); *id.* ("This decision is based on updated evidence that was not available for review by the State [a]gency. . . . In sum, the above residual functional capacity assessment is supported by and consistent with the medical evidence of record discussed in detail above.").
[7] *See* Admin. R. 402-03 (Date of Service: 04/05/2019 as a follow-up visit after

9

conclusion [Plaintiff] can perform simple work." *Id.* at 25. Additionally, "[d]ue to his legal history and reports of anger and mood swings, the [ALJ] conclude[d] that [Plaintiff] can have occasional interaction with coworkers and supervisors and no public interaction," and Plaintiff "requires few workplace changes." *Id.*

An ALJ may weigh competing medical opinions, *see Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012), but may not substitute his lay opinion for the uncontroverted medical opinion of examining medical professionals who opined concerning the effects of Plaintiff's mental impairments, *see Williams,* 355 F. App'x at 832. The Fifth Circuit explained "as a non-medical professional, the ALJ is not permitted to draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Kenneth S. v. Saul,* 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.) (internal quotations omitted) (quoting *Frank v. Barnhart,* 326 F.3d 618, 621-22 (5th Cir. 2003)), *rec. accepted,* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019) (Lindsay, J.). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill,* 892 F.3d 812, 818 (5th Cir. 2018) (internal quotations omitted) (quoting *Morales,* 225 F.3d at 319); *Deborah Jean S. v. Saul,* 2021 WL 374986, at *5-6 (N.D. Tex. Jan. 4, 2021) (Horan, J.) ("Rather than rely on the mental health professionals' opinions, the

---

Plaintiff's hospitalization at Dallas Behavioral Hospital from 03/29/2019 to 04/01/2019); *see also id.* at 407 (Date of Service: 03/26/2019); *id.* at 411, 415, 429, 434-35, 446, 447, 449, 451, 453.

ALJ seems to have rejected any diagnoses contrary to his conclusion based on his own medical assumptions. . . . But the principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially important in a case involving a mental disability." (citing *Lopez v. Saul,* 2020 WL 4934462, at *6 (W.D. Tex. Aug. 22, 2020)), *rec. accepted,* 2021 WL 364041 (N.D. Tex. Feb. 3, 2021) (Lynn, C.J.).

Here, the ALJ rejected all the medical expert evidence concerning the effects of Plaintiff's mental impairments and determined Plaintiff's RFC based on his own evaluation of findings from Plaintiff's mental status exams. This RFC determination is not supported by substantial evidence. *See Montano v. Saul,* 2021 WL 1379548, at *8-9 (N.D. Tex. Mar. 26, 2021) (Ray, J.), *rec. accepted,* 2021 WL 1377948 (N.D. Tex. Apr. 12, 2021) (O'Connor, J.); *see also Deborah Jean S.*, 2021 WL 374986, at *6; *see also Jeff Ivan M.*, 2019 WL 3847992, at *5; *Kenneth S.*, 2019 WL 3881618, at *7; *Salmond,* 892 F.3d at 818.

Nevertheless, because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected," Plaintiff must show he was prejudiced by the ALJ's disregard for the medical opinion evidence in assessing his mental RFC. *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988). To establish prejudice, Plaintiff must show this failure of the ALJ to rely on a medical opinion casts doubt onto the existence of substantial evidence supporting his disability determination. *See McNair v. Comm'r of Soc. Sec.,* 537 F. Supp. 2d 828, 827 (N.D. Tex. 2009)

("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Here, the ALJ's rejection of Olayiwole's and the State-agency consultants' medical opinions on Plaintiff's mental limitations is material. Based only on his own evaluation of the medical and other evidence, the ALJ concluded that Plaintiff could perform a limited range of light work and that he can understand, remember, and carry out simple, routine, repetitive tasks and have occasional interaction with coworkers and supervisors, but cannot have public interaction and requires few workplace changes. If the ALJ did not reject Olayiwole's opinion, he could conclude Plaintiff is unable to work because Plaintiff may be unable to maintain attention, act appropriately, get along with others, and cope with work stress. *See* Admin. R. 26 (citing *id.* at 462-63). This is especially apparent since the burden is on the Commissioner at Step 5 to identify gainful employment available in the national economy that Plaintiff can perform.[8] *Jeff Ivan M.*, 2019 WL 3847992, at *6 (citing

---

[8] At the hearing before the ALJ, the vocational expert testified an individual would not "meet the standard of quality or quantity needed for competitive employment" if the individual "due to impairment-related symptoms, such as the need to take additional breaks during the day, . . . would be off task 20% of the workday" or if "this individual would have two unscheduled absences per month" or "if the individual was able to show up for work but left work early two or more times on an unscheduled basis" per month or if "the individual would have difficulties getting along with co-workers or peers to the extent that either he would be disruptive to their work activity or that there would be confrontations that would require disciplinary action." Admin. R. 66-68.

12

*Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001)). Therefore, the ALJ erred by disregarding relevant medical opinions when determining Plaintiff's RFC and Plaintiff was harmed by that error. Accordingly, substantial evidence does not support the ALJ's determination of Plaintiff's RFC.

Plaintiff also argues the ALJ failed to comply with procedural safeguards to determine whether Plaintiff is disabled when not taking his medications set forth in Social Security Regulation (SSR) 18-3p. *See Simmons v. Berryhill*, 2018 WL 3900912, at *3 (N.D. Tex. July 31, 2018) (citing SSR 82-59, 1982 WL 31384 (rescinded and replaced by SSR 18-3p, 2018 WL 4945641, at *2-4 (Oct. 2, 2018))), *rec. accepted*, 2018 WL 3873664 (N.D. Tex. Aug. 15, 2018); *see also Ayala v. Saul*, 2020 WL 2487051, at *5-6 (N.D. Tex. Mar. 13, 2020), *rec. accepted in part and rejected in part*, 2020 WL 1226879 (N.D. Tex. Mar. 13, 2020). The Court pretermits consideration of this argument because the Court finds the ALJ's disability determination is not supported by substantial evidence

**Recommendation**

Because substantial evidence does not support the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, the Court should REVERSE the hearing decision and REMAND the case to the Commissioner of Social Security for further proceedings consistent with this opinion.

**SO RECOMMENDED.**

December 17, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).